1  Scott E. Davis
   State Bar No. 016160
2  SCOTT E. DAVIS, P.C.
   8360 E. Raintree Drive, Suite 140
3  Scottsdale, AZ 85260

4  Telephone:  (602) 482-4300
   Facsimile:   (602) 569-9720
5  email: davis@scottdavispc.com

6  *Attorney for Plaintiff Timothy Rocheleau*

7

8                    **UNITED STATES DISTRICT COURT**

9                         **DISTRICT OF ARIZONA**

10

11 Timothy Rocheleau,                          Case No.

12          Plaintiff,                         **COMPLAINT**

13      v.

14 The Lincoln National Life Insurance
   Company,
15
            Defendant.
16

17     Now comes the Plaintiff Timothy Rocheleau (hereinafter referred to as "Plaintiff"),

18 by and through his attorney, Scott E. Davis, and complaining against the Defendants, he

19 states:

20                              *Jurisdiction*

21     1.     Jurisdiction of the court is based upon the Employee Retirement Income

22 Security Act of 1974 (ERISA), and in particular, 29 U.S.C. §§1132(e)(1) and 1132(f).

23 Those provisions give the district courts jurisdiction to hear civil actions brought to recover

24 employee benefits.  In addition, this action may be brought before this Court pursuant to 28

25

26

U.S.C. §1331, which gives the Court jurisdiction over actions that arise under the laws of the United States.

### *Parties*

2.       Plaintiff is a resident of Pima County, Arizona.

3.       Upon information and belief, Defendant The Lincoln National Life Insurance Company (hereinafter referred to as "Lincoln") issued and fully insured a disability insurance policy to a policyholder named the Northern Michigan Hospital (hereinafter referred to as the "Company").  The specific Lincoln policy is known as GL 000400003002-00907 (hereinafter referred to as the "Policy") and the policy may have been included in and part of an employee welfare benefit Plan (hereinafter referred to as the "Plan") which was created by the Company.  Upon information and belief, at all times relevant hereto, the Plan constituted an "employee welfare benefit plan" as defined by 29 U.S.C. §1002(1).

4.       The Company's purpose in creating the Plan and purchasing the policy from Lincoln was to provide disability insurance for its employees.

5.       Upon information and belief,  Plaintiff believes that as it relates to his claim, Lincoln functioned in a fiduciary capacity as the Claim Administrator.

6.       Upon information and belief, Plaintiff believes Lincoln operated under a conflict of interest in evaluating his claim due to the fact that it operated in dual roles as the decision maker with regard to whether Plaintiff was disabled as well as the payor of benefits; *to wit,* Lincoln's conflict existed in that if it found Plaintiff was disabled it was also liable for payment of those benefits.

7.       Lincoln conducts business within Pima County and all events giving rise to this Complaint occurred within Pima County.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

*Venue*

8.     Venue is proper in this district pursuant to 29 U.S.C. §1132(e)(2) and 28 U.S.C. §1391.

*Nature of the Complaint*

9.     Incident to his employment, Plaintiff was a covered employee pursuant to the Plan and the relevant policy and a "participant" as defined by 29 U.S.C. §1002(7). Plaintiff seeks disability income benefits from Lincoln pursuant to §502(a)(1)(B) of ERISA, 29 U.S.C. §1132(a)(1)(B).

10.     After working for the Company as a loyal employee, Plaintiff became disabled on or about May 24, 2009 due to serious medical conditions and was unable to work in his designated occupation as a Registered Nurse.  Plaintiff has remained disabled as that term is defined in the relevant policy continuously since that date and has not been able to return to any occupation as a result of his serious medical conditions.

11.     Following his disability, Plaintiff applied for short term disability benefits which were approved and have been exhausted.

12.     Plaintiff then applied for long term disability benefits under the relevant Lincoln policy.  The relevant long term disability policy provides the following definition of disability:

Total Disability or Totally Disabled means that an Insured Employee, due to an Injury or Sickness is unable:

- During the Elimination Period and the Own Occupation Period, to perform each of the main duties of the Insured Employee's regular occupation; and

- After the Own Occupation Period, to perform each of the main duties of any gainful occupation for which the Insured Employee's training, education or experience will reasonably allow.

-3-

13.     In support of his claim for long term disability benefits, Plaintiff submitted to Lincoln medical questionnaires and medical records from his treating physicians supporting his disability as defined by the relevant Lincoln policy.

14.     Lincoln approved Plaintiff's claim for long term disability benefits for the period of November 20, 2009 through November 20, 2011, or for the total 24 month Own Occupation period.

15.     Lincoln informed Plaintiff in a letter dated October 27, 2011 that it was terminating benefits beyond November 20, 2011 due to a lack of medical documentation supporting his inability to work in any occupation.

16.     Pursuant to 29 U.S.C. §1133, Plaintiff timely appealed the October 27, 2011 termination of his long term disability benefits in a letter dated April 23, 2012.  In support of his appeal, Plaintiff submitted to Lincoln additional medical, vocational and lay witness evidence demonstrating he met any definition of disability set forth in the relevant Lincoln policy.

17.     In support of his appeal, Plaintiff submitted to Lincoln a narrative letter dated June 13, 2012 from his current treating board certified physician who opined, "I do believe [Plaintiff] has been unable to work since 5/23/09."

18.     Plaintiff also submitted a Functional Capacity Evaluation Report to Lincoln dated May 16, 2012 which determined after an evaluation of Plaintiff's serious medical conditions, "[Plaintiff's] tests indicate inability to perform tasks, even at the <u>sedentary work level</u>, due to his restrictions and limitations.   [Plaintiff] showed inability to maintain any sustained functional work position in order to function at a rate conducive to gainful employment." (original emphasis).

19.     Further supporting his appeal, Plaintiff submitted a vocational report from a certified vocational expert dated June 19, 2012 who after personally interviewing Plaintiff

and reviewing the relevant evidence concluded, "From a vocational perspective, [Plaintiff] is totally disabled from all work."

20.    In addition to the medical records and reports submitted to Lincoln, Plaintiff also submitted a June 18, 2012, sworn affidavit authored by his long time friend who confirmed Plaintiff is unable to work in any occupation and his condition has not improved in any way since his date of disability.

21.    During the administrative review of Plaintiff's claim, he applied for and received Social Security disability benefits through the Social Security Administration (hereinafter referred to as the "SSA").

22.    Following a hearing before an Administrative Law Judge, SSA found Plaintiff became disabled from engaging in *any gainful occupation* which may have existed in the national economy as of May 22, 2009.  Plaintiff submitted to Lincoln a copy of the judge's February 10, 2012 Notice of Decision – Fully Favorable and February 22, 2012 Notice of Award from SSA.

23.    The SSA's definition of disability is significantly stricter and harder to meet than the definition of disability in the Lincoln policy during the Own Occupation Period and significantly similar to the definition of disability after the Own Occupation Period, or after 24 months of disability.  Therefore, the SSA's approval as well as an independent federal law judge's findings and conclusions of law are relevant evidence for this Court to consider with regard to the lawfulness of Lincoln's decision to terminate Plaintiff's benefits and ignore SSA's determination in his claim.

24.    In a letter dated July 17, 2012, Lincoln informed Plaintiff that the approval of his Social Security disability claim resulted in an overpayment of long term disability benefits and requested for Plaintiff to reimburse the total amount of the overpayment to Lincoln immediately.

25.    As part of its review of Plaintiff's claim for long term disability benefits, Lincoln obtained a medical records only "paper review" of Plaintiff's claim from Steven M. Lobel, M.D.  Upon information and belief, Plaintiff believes Dr. Lobel may be a long time consultant for the disability insurance industry and as a result, he may be biased and have a conflict of interest.  Plaintiff further alleges Dr. Lobel has an incentive to protect his own consulting relationships with the disability insurance industry and Lincoln by providing medical records only "paper reviews" which selectively review or ignore evidence, such as occurred in Plaintiff's claim, in order to provide opinions and report(s) which are favorable to insurance companies such as Lincoln and which supported the denial of Plaintiff's claim.

26.    In a letter dated June 27, 2012, in order to engage Lincoln in a dialogue and so he could perfect his claim, Plaintiff requested a complete copy of any and all medical records only "paper reviews" from Lincoln and the opportunity to provide these reviews to his treating physicians for response prior to Lincoln rendering a determination in his claim.

27.    Prior to rendering its denial, Lincoln never shared with Plaintiff the report authored by Dr. Lobel and never engaged Plaintiff in a dialogue so he could either respond to the report and/or perfect his claim.

28.    In a letter dated July 30, 2012, Lincoln notified Plaintiff it was denying his claim for long term disability benefits beyond November 20, 2011.

29.    In a letter dated September 27, 2012, Plaintiff appealed Lincoln's July 30, 2012 denial and submitted additional medical documentation supporting his allegation that he met any definition of disability in the Lincoln policy.

30.    As part of its review of Plaintiff's claim for long term disability benefits, Lincoln obtained medical records only, "paper reviews" of Plaintiff's claim from Mehras Akhavan, M.D. and Nick Defilippis, M.D.

31.    Upon information and belief, Plaintiff believes Drs. Akhavan and Defilippis are long time medical consultants for the disability insurance industry and Lincoln. Plaintiff believes Drs. Akhavan and Defilippis have incentives to protect their own consulting relationships with the disability insurance industry and Lincoln by providing medical records only peer reviews which selectively review or ignore evidence, such as occurred in Plaintiff's claim, in order to provide opinions and report(s) which are favorable to insurance companies and which supported the denial of Plaintiff's long term disability claim.

32.    In a letter dated January 3, 2013 Lincoln provided Plaintiff with a complete copy of the reports authored by Drs. Akhavan and Defilippis and the opportunity for Plaintiff's physicians to respond to the reports.

33.    In response to Drs. Akhavan and Defilippis' reports, Plaintiff submitted a January 18, 2013 narrative letter from his board certified treating physician who confirmed he disagreed with the conclusions set forth in Drs. Akhavan and Defilippis' reports, specifically their opinions that Plaintiff was capable of working.

34.    Notwithstanding the evidence submitted by Plaintiff, in a letter dated February 28, 2013, Lincoln notified Plaintiff it had denied his appeal and claim for long term disability benefits under the Lincoln policy.  In the letter, Lincoln also notified Plaintiff he had exhausted his administrative levels of review and could file a civil action lawsuit in federal court pursuant to ERISA.

35.    In denying Plaintiff's claim, Lincoln failed to adequately investigate the claim and failed to engage him in a dialogue with regard to what evidence was necessary so Plaintiff could perfect his appeal and claim.  Lincoln's failure to investigate the claim and to engage in this dialogue or to obtain the evidence it believed was important to perfect

Plaintiff's claim is a violation of ERISA and Ninth Circuit case law and a reason he did not receive a full and fair review.

36.     Upon information and belief, Lincoln denied Plaintiff of a lawful, full and fair review pursuant to ERISA for various other reasons including but not limited to: failing to properly investigate the claim by considering all evidence submitted by Plaintiff or de-emphasizing the medical evidence supporting Plaintiff's disability; failing to credit Plaintiff's reliable evidence; disregarding Plaintiff's self-reported symptoms; failing to consider all the diagnoses and/or limitations set forth in his medical evidence as well as the combination those diagnoses and limitations would have on his ability to work in any occupation; failing to investigate by obtaining an Independent Medical Examination when the policy allowed for one; failing to engage Plaintiff in a dialogue so he could submit the necessary evidence to perfect his claim and failing to consider the impact the side effects from Plaintiff's medications would have on his ability to engage in any occupation.

37.     In evaluating Plaintiff's claim on appeal, Lincoln had an obligation pursuant to ERISA to administer Plaintiff's claim "solely in his best interests and other participants" which it failed to do. [1]

38.     Plaintiff believes a reason Lincoln provided an unlawful review which was neither full nor fair and that violated ERISA, specifically, 29 U.S.C. § 2560.503-1, is due to the dual roles Lincoln undertook as decision maker and payor of benefits which created

---

[1] It sets forth a special standard of care upon a plan administrator, namely, that the administrator "discharge [its] duties" in respect to discretionary claims processing "solely in the interests of the participants and beneficiaries" of the plan, § 1104(a)(1); it simultaneously underscores the particular importance of accurate claims processing by insisting that administrators "provide a 'full and fair review' of claim denials," Firestone, 489 U.S., at 113, 109 S. Ct. 948, 103 L. Ed. 2d 80 (quoting § 1133(2)); and it supplements marketplace and regulatory controls with judicial review of individual claim denials, see § 1132(a)(1)(B). *Metro. Life Ins. Co. v. Glenn*, 128 S. Ct. 2343, 2350 (U.S. 2008).

an inherent conflict of interest.  Due to its conflict of interest, when Lincoln terminated Plaintiff's long term disability benefits, it saved money.

39.     Plaintiff is entitled to discovery regarding Lincoln's aforementioned conflicts of interest and any individual, including the medical records review professionals who reviewed his claim and the Court may properly weigh and consider evidence regarding the nature, extent and effect of *any* conflict of interest which may have impacted or influenced Lincoln's decision to deny his claim.

40.     With regard to whether Plaintiff meets the definition of disability set forth in the policy, the Court should review the evidence in Plaintiff's claim *de novo*, because even if the Court concludes the policy confers discretion, the unlawful violations of ERISA committed by Lincoln as referenced herein are so flagrant they justify *de novo* review.

41.     As a direct result of Lincoln's decision to deny Plaintiff's disability claim, he has been injured and suffered damages in the form of lost disability benefits, in addition to other potential employee benefits he may have been entitled to receive through or from the Plan and/or Company as a result of being found disabled, including but not limited to, health insurance benefits or coverage, retirement or pension benefits, a life insurance policy and a waiver of the life insurance premium on that policy in the event Plaintiff became disabled.

42.     Pursuant to 29 U.S.C. §1132, Plaintiff is entitled to recover unpaid benefits, prejudgment interest, reasonable attorney's fees and costs from Defendants.

43.     Plaintiff is entitled to prejudgment interest at the rate of 10% per annum pursuant to A.R.S. §20-462, or at such other rate as is appropriate to compensate him for losses he incurred as a result of Defendants' unjustified denial of payment of benefits.

WHEREFORE, Plaintiff prays for judgment as follows:

A.     For an Order requiring Defendant to pay Plaintiff the disability benefits he may be entitled to as a result of being found disabled pursuant to the policy from the date he was first denied these benefits through the date of judgment and prejudgment interest thereon;

B.     For an Order finding that Plaintiff meets any definition of disability set forth in the relevant Lincoln policy and directing Defendant to continue paying Plaintiff the aforementioned benefits until such time he meets the conditions for termination of benefits;

C.     For attorney's fees and costs incurred as a result of prosecuting this suit pursuant to 29 U.S.C. §1132(g); and

D.     For such other and further relief as the Court deems just and proper.

DATED this 3rd day of June, 2013.

SCOTT E. DAVIS. P.C.

By:     /s/ Scott E. Davis
        Scott E. Davis
        Attorney for Plaintiff